UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| BRIGHT CAPTURE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZOHO CORPORATION,<br><br>    Defendant. | Civil Action No. 6:22-CV-00048-ADA |

**ZOHO CORPORATION'S OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| | A. The Background of the Patents-In-Suit | 2 |
| | B. The Prosecution History | 4 |
| II. | LEGAL STANDARDS | 5 |
| III. | ARGUMENT | 6 |
| | A. Scanner | 6 |
| | C. Computer input device | 8 |
| | D. Preamble of claim 16 of '151 patent | 9 |
| IV. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Cases**

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989) .................9

*Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331 (Fed. Cir. 2006) .............................10

*GPNE Corp. v. Apple Inc.*, 830 F.3d 1365 (Fed. Cir. 2016) ..........................................................8

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 422 F.3d 1312 (Fed. Cir. 2006) ......................................7

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010 (Fed. Cir. 2009) .....................7

*Kropa v. Robie*, 187 F.2d 150 (CCPA 1951) ................................................................................10

*Netword, LLC v. Centraal Corp.*, 242 F.3d 1347 (Fed. Cir. 2001) .................................................7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ...................5

*Pac-Tec Inc. v. Amerace Corp.*, 903 F.2d 796 (Fed. Cir. 1990) .....................................................9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .............................................................5, 6

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011) ..............1, 5

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ...........................................5

*UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816 (Fed. Cir. 2016) ......................................9

*Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007) ....................7

*VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014) ..................................................7

*Wastow Enterprises, LLC v. Truckmovers.com, Inc.*, 855 F. App'x 748 (Fed. Cir. 2021) ............8

I.      INTRODUCTION

Bright Capture asserts four patents—United States Patent Nos. 10,453,151 ("'151 patent"), 10,049,410 ("'410 patent"), 7,746,510 ("'510 patent"), and 8,693,070 ("'070 patent")—all of which share a common specification ("Specification") and claim priority to the same 2001 provisional application.  The Specification is short and simple.  It describes in functional terms a scanner and software used for capturing and tracking expenses.  As the "Field of Invention" in the Specification explains, these patents are directed to "a scanner apparatus to scan receipts into a computer and a software program which automatically organizes … [the captured numerical information] in various formats, namely tabular statements, pie charts, etc., and allows for record keeping, budgeting and reconciliation."  '510 patent, 1:13-17.[1]

The parties have only two substantive claim construction disputes, the primary of which is over the term "scanner."  Bright Capture seeks to have "scanner" remain without a construction in an apparent effort to broaden the scope of the patents beyond the Specification and cover any device that captures an image, such as an iPhone.  But the Specification makes clear that the "invention" is not directed to any type of "commercially available" scanner.  *See* '510 patent, 1:48-57.  Instead, the "scanner" of the claimed invention is described as a "small, light-weight portable one" with a "built-in feeder" that "takes in receipts as they are fed, similar to a fax machine where the fax page is swept in."  *Id.*, 1:48-54; 3:63-4:3.  Zoho's proposed construction appropriately "tether[s] the claims to what the specifications indicate the inventor actually invented" while Bright Capture's position does not.  *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).

---

[1] All cites to the Specification are to the '510 patent unless otherwise indicated.

A.     **The Background of the Patents-In-Suit**

The '151, '410 and '070 patents are continuations of the '510 patent and are subject to terminal disclaimers. The Specification describes the alleged invention as "an apparatus to scan receipts with a software which automatically processes, organizes and saves all the information from the scanned receipts." '510 patent at 2:46–48. The purported invention sought to solve the hassle of manually inputting receipt information into a computer:

> You might have attempted to keep track of how you were spending by saving all the receipts, checks, bills and notes about cash transactions, etc. You patiently entered all the receipts into the computer (namely into one of the budgeting or finance managing software programs). This is very laborious and time consuming and after a while you will loose [sic] patience and stop entering the data. There ends the plan to know where your salary is going.

*Id.* at 1:19–32.

The alleged invention's solution to the problem of manual data entry was to use a scanner so that "[w]hen receipts are fed into the scanner, the invention automatically enters all the information into the computer 2 that is connected to the scanner instead of manually typing the information in." *Id*. at 4:37–40. The Specification acknowledges that "[t]here [were] a number of different kinds of scanners commercially available" at the time of the invention. *Id*. at 1:48–49. But, "none of them are of the type described in this invention." *Id*. at 1:50. The Specification explains that scanner of the invention is "different from conventional large size scanners you might have seen in offices or in copying shops" in that the scanner in the invention is "a small light weight portable one" with "a built-in feeder that takes in receipts as they are fed, similar to a fax machine where the fax page is swept in." *Id*. at 3:63-4:3. It explains that "when a receipt is fed or inserted, the scanner of the invention automatically grabs and moves the receipt while it is being scanned and stops and the completion of the scanning …." *Id*. at 1:51-52.

2

The purported invention then uses "software" that "automatically processes, organizes and saves all the information from the scanned receipts." *Id*. at 2:47–48. The Specification describes the "software" as "a simple-to-use financial organizer where all receipt information gets organized into an easily useable format." *Id*. at 3:28–31. The Specification does not disclose an algorithm, code, or other any details of the "software" other than a description of its functionality.

Figure 1 illustrates the purportedly innovative apparatus, which is essentially the scanner connected to computer with a monitor and printer:



FIG. 1 Block Diagram of the Apparatus Hardware

'510 patent at Fig. 1.

The asserted claims likewise claim an apparatus (or method using an apparatus) including a scanner and computer for (1) "scanning" receipts to collect expense data, (2) "processing" that

data using a computer and (3) "displaying" the results. *Id*. at claim 11.  Independent claim 11 of the '510 patent is representative and recites:

> An apparatus for managing financial information, comprising:
> A scanner for scanning various types of receipts of no predefined format, each said receipt containing expense information printed thereon;
> A computer in communication with said scanner, said computer receiving a scan of each said receipt, and processing said scan by collecting the expense information from the scan; and
> A display device in communication with said computer, wherein said computer organizes said expense information collected from each said scan by categorizing the expense information into one or more predetermined categories to obtain report information,
> Wherein said report information for at least one of said predetermined categories is displayed on said display device.

*Id.*  The *other* independent asserted claims are materially the same.

    **B.**    <u>**The Prosecution History**</u>

The provisional to which all of the asserted patents claim priority was filed on January 25, 2001 by the single named inventor.  The provisional mirrors much of the Specification but uses marketing terminology, for example, referring to the allegedly inventive scanner as "BillScan."  Marton Decl., Ex. A (Provisional App. No. 60/265,406) at p. 1 ("The system contains a BillScan, an apparatus for scanning bills into a computer …..").  The provisional explains that the "BillScan scanner is always connected to a computer," is "portable," and has "a built-in feeder" that allows a user to "feed bills into the scanner." *Id.* at pp. 2–3 (§§ 2.2 and 2.3).  Like the Specification, the provisional does not disclose an algorithm, code, or other any details of the "software" other than a description of its functionality.

The original applied for claims in the '510 patent, the first patent in the family, were short and simple.  Marton Decl., Ex. B ('510 Patent File History, Jan. 24, 2002 Application) at pp. 9–10 (listing claims).  For example, the original claim 1 merely recited "an apparatus to scan bills with a unique software which automatically organizes all the information from the scanned

bills." *Id*. The examiner rejected this and all other originally applied for claims based on prior art. Marton Decl., Ex. C ('510 Patent File History, Sept. 9, 2005 Office Action) at 3 (summary), 4–10 (claim rejections). After a series of rejections and amendments, the '510 patent claims were allowed in their current form. *See generally* Marton Decl., Ex. D ('510 Patent File History, Feb. 19, 2020 Notice of Allowance).

## II.  LEGAL STANDARDS

The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

To understand the claims, the court must look to the specification. "It is axiomatic that … [c]laim language must always be read in view of the written description." *Retractable Techs.*, 653 F.3d at 1305. "[T]he specification is always highly relevant." *Phillips*, 415 F.3d at 1315. "Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id*. If a term could have "several common meanings," the specification "point[s] away from the improper meanings and toward the proper meaning." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and

treatises may help the Court understand the technology and how one skilled in the art might use claim terms. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field. *Id.*

## III. ARGUMENT

### A. Scanner

| Claims | Bright Capture Construction | Zoho Construction |
|---|---|---|
| **"scanner"** | Plain and ordinary meaning – no need for construction. | "a portable device with a built-in feeder that scans documents as they are fed into the device" |

All asserted claims[2] include a "scanner." As described by the Specification, this "scanner" is alleged to be different from those that were "commercially available" at the time of invention. '510 patent at 1:48-57. The Specification explains that unlike purportedly "conventional" scanners, the allegedly inventive "scanner," among other things, is "small light-weight and portable" and "has a built-in feeder . . . . " *Id*. at 3:62-4:3. This aligns with how the provisional application described the allegedly inventive "BillScan scanner." Marton Decl., Ex. A at pp. 2–3 (§§ 2.2 and 2.3) (describing the "BillScan scanner" as "portable" and having "a built-in feeder" that allows a user to "feed bills into the scanner."). It also mirrors how the allegedly inventive scanner is described as operating. In each instance, the scanner is described as having documents "fed" into it. '510 patent at 1:51-53 ("When a receipt is fed or inserted, the scanner of this invention automatically grabs and moves the receipt while is being scanned and stops at completion of scanning the bill."); *id*. at 2:53-54 ("A user needs to insert one receipt at a

---

[2] Claim 1 of the'410 patent requires a "computer input device" which, as discussed below, must be a scanner.

6

time into this scanner."); *id.* at 4:17-18 ("Now you can feed the receipts into the scanner one at a time."); *id.* at 4:37 ("When receipts are fed into the scanner….").

Given that the "scanner" of "this invention" is specifically described as being "portable' and having a "built-on feeder," the appropriate construction for "scanner" must include these attributes. *Netword, LLC v. Central Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014) (where the background and summary of the invention identify "a key part of the novel solution to the specific problem identified in the prior art" that is "'repeatedly and consistently' used to characterize the invention," the specification "strongly suggests that it should be read as part of the claim," even where the specification "mechanically prefaces most passages with the phrase 'according to one aspect of the present invention'") (citing *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1321-23 (Fed. Cir. 2011)); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009) (where "[a]ll of the examples described in the specification involve skin wounds," to construe "wound" to include other wound types "would thus expand the scope of the claims far beyond anything described in the specification").

Zoho's construction of "scanner" as a portable one with a built-in feeder is exactly as the applicants described the invention throughout the Specification and, is, thus, the correct construction. *See Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (construing terms consistent with how patent described features as "the present invention"; *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 422 F.3d 1312, 1318 (Fed. Cir. 2006) (construing terms to limit claim scope to what written description repeatedly called "this invention" or the "present invention").

C. <u>**Computer input device**</u>

| Claims | Bright Capture Construction | Zoho Construction |
|---|---|---|
| **"computer input device"** | Plain and ordinary meaning – no need for construction. | "a portable device with a built-in feeder that scans documents as they are fed into the device" |

Claim 1 of the '410 patent recites a "computer input device" that "receives" or scans a paper expense receipt. In every instance in the Specification, the device that receives a paper receipt is a scanner. *See* '510 patent at Abstract ("The scanner, which accommodates paper of differing sizes, is used to input bills, receipts, bank statements etc."); *id*. at 1:51-52 ("the scanner of this invention automatically grabs and moves the receipt …."; *id*. at 2:53-54 ("A user needs to insert one receipt at a time into this scanner."); *id*. at 3:62-4:3 ("The system, as illustrated in Fig. 1, contains the scanner …. It … takes in receipts as they are fed…. "); *id*. at 4:37 ("when receipts are fed into the scanner…."). Indeed, a "scanner" is what the entire invention is directed to. *See id*. at Title ("Receipts Scanner and Financial Organizer"); *id*. at Abstract ("The system contains a scanner, an apparatus for scanning receipts into a computer …."); *id*. at 1:13 ("This invention relates to a scanner apparatus to scan receipts into a computer…."); *id*. at 2:48-49 ("The invention includes a scanner that is connected to computer …."). As such, "computer input device" should be interpreted as a scanner and should be construed the same as "scanner." *GPNE Corp. v. Apple Inc.,* 830 F.3d 1365, 1370–71 (Fed. Cir. 2016) (affirming construction of the term "node" as a "pager" where the specification "repeatedly" described the invention as system of pagers); *Wastow Enterprises, LLC v. Truckmovers.com, Inc.,* 855 F. App'x 748, 752 (Fed. Cir. 2021) (non-precedential) (affirming that "device" means "a universal folding boom trailer" based on specification repeatedly, and title, so describing the invention); *see also*

*UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 823 (Fed. Cir. 2016) (affirming that "handheld device" should be construed as limited to a direct pointing device because the specification repeatedly extoled direct pointing and repeatedly disparaged indirect pointing devices, and the title of the specification referred to "direct pointing").

      D.      **<u>Preamble of claim 16 of '151 patent</u>**

Bright Capture disputes that the preamble of claim 16 of the '151 patent is limiting. Claim 16 of the '151 patent recites:

> In a system having a scanner in communication with a computing device, a method comprising the steps of:
>
> processing a digital image of a document having no predefined format and containing numerical information to automatically extract the numerical information;
>
> enabling editing of the extracted numerical information; and
>
> automatically categorizing the extracted numerical information into at least one predefined category to enable creating a report including the at least one predefined category.

Language in the preamble that defines the structure of the claimed invention must be treated as a claim limitation. *See, e.g.*, *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) (The determination of whether preamble recitations are structural limitations can be resolved only on review of the entire application "to gain an understanding of what the inventors actually invented and intended to encompass by the claim" as drafted without importing "'extraneous' limitations from the specification."); *Pac-Tec Inc. v. Amerace Corp.*, 903 F.2d 796, 801 (Fed. Cir. 1990) (determining that preamble language that constitutes a structural limitation of the invention is limiting).  Here, the preamble recites the core components of the invention: "a scanner in communication with a computing device."  As described above, the scanner connected to the computer is the invention. *See, e.g.,* '151 patent at

9

2:47-48 ("The invention includes a scanner that is connected to a computer").  Thus, the preamble of this claim is "necessary to give life, meaning, and vitality to the claim[]" and is limiting.  *Kropa v. Robie*, 187 F.2d 150, 861 (CCPA 1951); *see also Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343 (Fed. Cir. 2006) (holding that the preamble is limiting where it recites a "necessary and defining aspect of the invention").

### IV. CONCLUSION

For the reasons stated above, Zoho asks that the Court adopt its proposed claim constructions.

Date: February 13, 2023

/s/ Ryan J. Marton
Ryan J. Marton (*admitted Pro Hac Vice*)
ryan@martonribera.com
Carolyn Chang (*admitted Pro Hac Vice*)
carolyn@martonribera.com
Phillip Haack (*admitted Pro Hac Vice*)
phaack@martonribera.com
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Tel: 415.360.2511

Darryl J. Adams (TX Bar No. 00796101)
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
Tel: 512.402.3550
Fax: 512.402.6865

*Attorneys for Defendant Zoho Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 13, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email.

Dated: February 13, 2023            */s/ Ryan J. Marton*
                                    Ryan J. Marton