IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| BRIGHT CAPTURE LLC,<br><br>   Plaintiff,<br><br> v.<br><br>ZOHO CORPORATION,<br><br>   Defendants. | Case No. 6:22-cv-48 |

# PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

**Table of Contents**

I. Introduction ........................................................................................................................ 1

II. Legal Standards ................................................................................................................. 2

III. Argument .......................................................................................................................... 3

   A. Scanner ('510 patent claim 11; '070 patent claim 1; and '151 patent preamble) . 3

   B. Computer Input Device ('410 patent claim 1) ...................................................... 10

   C. Preamble of Claim 16 of the '151 Patent .............................................................. 11

IV. Conclusion ....................................................................................................................... 13

**Table of Authorities**

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
 567 F.3d 1366 (Fed. Cir. 2009)……………………………………………………….………..2

*Am. Med. Sys. v. Biolitec, Inc.*,
 618 F.3d 1354 (Fed. Cir. 2010)……………………………………………………………...11, 12

*Aventis Pharm. Inc. v. Amino Chems. Ltd.*,
 715 F.3d 1363 (Fed. Cir. 2013)……………………………………………………..…………..2

*Avid Tech., Inc. v. Harmonic, Inc.*,
 812 F.3d 1040 (Fed. Cir. 2016)……………..……………………………………………….…...3

*Broadcom Corp. v. Qualcomm Inc.*,
 No. SACV 05-467-JVS(RNBx), 2006 U.S. Dist. LEXIS 97882 (C.D. Cal. Sept. 11, 2006)….13

*Catalina Mktg. Int'l, Inc.*,
 289 F.3d 801 (Fed. Cir. 2002)………………………………………………………………….11

*Comark Commc'ns, Inc. v. Harris Corp.*,
 156 F.3d 1182 (Fed. Cir. 1998)………………………………………………………..………..3

*Finjan, Inc. v. Secure Computing Corp.*,
 626 F.3d 1197 (Fed. Cir. 2010). ……………………………………………………..………4

*Golden Bridge Tech., Inc. v. Apple Inc.*,
 758 F.3d 1362 (Fed. Cir. 2014). ……………………………………………………….…………4

*Kropa v. Robie*,
 7 F.2d 150 (CCPA 1951)……………………………………………………………………12

*In re Cruciferous Sprout Litigation*,
 301 F.3d 1343 (Fed. Cir. 2002)………………………………………………………………….9

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
 381 F.3d 1111 (Fed. Cir. 2004)…………………………………………….…….…………..2

*In re Rohrbacher*,
 48 C.C.P.A. 749 (CCPA 1960)…………………………………………………………...12

*In re Wertheim*,
 541 F.2d 257 (CCPA 1976)………………………………………………………………12

*K–2 Corp. v. Salomon S.A.*,

    191 F.3d 1356 (Fed. Cir. 1999)……………………………………………..……….………..2

*Lamson v. United States*,
    110 Fed. Cl. 691 (2013)…………………………………………………………..…………….2

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)……………………………………………………..…………..2

*Netword, LLC v. Central Corp.*,
    242 F.3d 1347 (Fed. Cir. 2001)………………………………………………………..9, 10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)……………………………………...…….…………..2, 3, 6

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)………………………………………………….………..2

*ScriptPro LLC v. Innovation Assocs.*,
    833 F.3d 1336 (Fed. Cir. 2016)……………………………………………………..……...7

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1986)…………….……………………………………………..7, 10

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)……………………………………………...……………..3

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)…………………………………………………………….9

**Statutes & Regulations**

35 U.S.C. § 112………………………………………………………………………………….6

**I.       Introduction**

Bright Capture asserts that Zoho Corporation infringes four related patents sharing a common specification: U.S. Patent No. 7,746,510 ("'510 patent") (claims 11, 13, and 15 are asserted); U.S. Patent No. 8,693,070 ("'070 patent") (claims 1, 5, and 6 are asserted); U.S. Patent No. 10,049,410 ("'410 patent") (claim 1 is asserted); and U.S. Patent No. 10,453,151 ("'151 patent") (claims 16, 18, and 20 are asserted). As described in the Abstract of the '510 patent, the specification discloses systems and methods for processing, organizing and saving expense information that can be viewed in various formats. The specification also explains that the disclosed technology "accommodates paper of differing sizes." '510 patent at Abstract.

The parties' claim-construction disputes revolve around Defendant's effort to rewrite all of the asserted claims to require a scanner comprising "a portable device with a built-in feeder that scans documents as they are fed into the device." While the specification discloses a scanner with such features, none of the asserted claims include such a requirement. In contrast, some of the unasserted claims *do* include such features. During the lengthy prosecution of the '510 patent, culminating in a decision by the Board of Patent Appeals & Interferences, no one—whether the inventor, the Examiner, or the Board—interpreted the asserted claims to require a portable device with a built-in feeder. Rather, as proceedings progressed toward the Board's decision, prosecution focused on a different feature that is expressly recited in the claims—the ability to process receipts or documents of no predefined format.

It is only Zoho, driven by its litigation positions, that now seeks to import features of a preferred embodiment into the claims. These efforts are contrary to the law of claim construction and should be rejected.

**II.       Legal Standards**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The purpose of claim construction is to clarify ambiguities, not to simply rewrite the claims using different words. *E.g., K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

The "objective baseline" from which to begin claim construction is to inquire "how a person of ordinary skill in the art understands a claim term." *Lamson v. United States*, 110 Fed. Cl. 691, 699 (2013) (citing *Phillips*, 415 F.3d at 1313). The court generally assigns meaning to claim terms "according to the customary understanding of a person of ordinary skill in the art who reads them in the context of the intrinsic record" (i.e., the specification and prosecution history). *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1376 (Fed. Cir. 2009) (citing *Phillips*, 415 F.3d at 1312-13). "There is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321.

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[C]laims 'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). However, "particular embodiments and examples appearing in the specification will

2

not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quot. omitted); *Phillips*, 415 F.3d at 1323.

The Federal Circuit has also "observed that dictionaries and treatises can be useful in claim construction." *Phillips*, 415 F.3d at 1318. This is particularly true of "technical dictionaries," as they may assist the Court in understanding "the way in which one of skill in the art might use the claim terms." *Id.* This is because "dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Id.* Therefore, "those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention." *Id.*

**III.    Argument**

    **A.    Scanner ('510 patent claim 11; '070 patent claim 1; and '151 patent preamble[1])**

| Claim Term | Bright Capture's Proposed Construction | Zoho's Proposed Construction |
|---|---|---|
| "scanner" | Plain and ordinary meaning | "a portable device with a built-in feeder that scans documents as they are fed into the device" |

"[T]he aim of claim construction" is "to give the finder of fact an understandable interpretation of claim scope to apply to the accused systems." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1050 (Fed. Cir. 2016). This does not mean "that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (holding, *inter*

---

[1] The parties dispute whether the preamble is limiting.

*alia*, that district court properly refused to adopt claim construction that amounted to an "undisputed restatement of what these words mean"). It is therefore appropriate for a court to construe claim terms according to their plain meaning when the court has resolved any actual disputes raised by the parties. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (holding that district court did not err in construing claim phrase according to its plain meaning because the court resolved the parties' dispute). Here, the Court may do so simply by rejecting Defendant's effort to narrow the claim language to a preferred embodiment. *See Finjan*, 626 F.3d at 1207 (giving claim phrase its plain meaning resolved the parties' dispute).

The asserted patents in this case all claim priority to a non-provisional application filed in 2002. By that time, the term "scanner" was known in the art. For example, the Microsoft Computer Dictionary, Fifth Edition (2002), defined "scanner" as follows:

> An optical input device that uses light-sensing equipment to capture an image on paper or some other subject. The image is translated into a digital signal that can then be manipulated by optical character recognition (OCR) software or graphics software. Scanners come in a number of types, including flatbed (scan head passes over a stationary subject), feed (subject is pulled across a stationary scan head), drum (subject is rotated around a stationary scan head), and handheld (user passes device over a stationary subject).

Ex. A. As evidenced by the Microsoft Computer Dictionary, a person of ordinary skill in the art at the time of the invention would not have understood the term "scanner" to be limited to "a portable device with a built-in feeder that scans documents as they are fed into the device." Defendant does not argue otherwise.

"Claim terms are generally given their plain and ordinary meaning to one of skill in the art when read in the context of the specification and prosecution history." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014). There are "only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2)

when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Id.* Neither of those exceptions applies here.

The specification does not indicate that the inventor acted as his own lexicographer by narrowing the meaning of the term "scanner" as Defendant proposes. For example, the Abstract states that "[t]he system contains a scanner, *an apparatus for scanning receipts into a computer* and a unique software program which automatically processes, organizes and saves expense information that can be viewed in various formats, namely, tabular statements, pie-charts, etc." '510 patent at Abstract (emphasis added). This description is consistent with the ordinary meaning of the term.[2] It does not indicate that the inventor intended to act as his own lexicographer with respect to the term "scanner" or that he disavowed any scope. Nor does it dictate Defendant's proposed construction (e.g., requiring that the scanner include "a built-in feeder that scans documents as they are fed into the device"). Rather, the specification of the asserted patents opens with a statement indicating that the inventor used the term "scanner" consistent with its ordinary meaning.

Defendant cites a handful of passages from the specification in support of its effort to narrow the term "scanner" in the manner it proposes. Most of these passages come from the section of the specification titled, "Detailed Description *of the Preferred Embodiment*," in which (as the title suggests) the inventor described his preferred embodiment for carrying out the invention: "One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case."

---

[2] The Abstract goes on to state that "[t]he scanner, which accommodates paper of differing sizes, is used to input bills, receipts, bank statements, etc." This is consistent with the language of '510 patent claim 11 requiring that the scanner "scan[] various types of receipts of no predefined format," as well as similar recitations in the other asserted claims. '510 patent at 6:20-21.

5

*Phillips*, 415 F.3d at 1323. In fact, the inventor was required to disclose his preferred embodiment to comply with the patent laws' mandate that inventors disclose their "best mode" for practicing the invention: "The specification . . . shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112 (pre-AIA). As the Federal Circuit recognized in the *en banc Phillips* decision, courts must refrain from using the inventor's compliance with the best-mode requirement as justification for narrowly construing the claims: "To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips*, 415 F.3d at 1323.

The Federal Circuit further stated that "[m]uch of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." *Id.* Here, the asserted patents' specification shows that the exemplary embodiment was intended to be just that—a non-limiting example. The specification states that "[a]n *embodiment* of the present invention will be described hereinafter with reference to the accompanying drawing." '510 patent at 3:44-45 (emphasis added). Further, the paragraph preceding the Brief Description of the Drawings and the Detailed Description of the Preferred Embodiment refers to "the *illustrative embodiments* about to be described." *Id.* at 3:36-37 (emphasis added). The passages Defendant cites from the Detailed Description of the Preferred Embodiment specifically relate to "scanner 1" shown in FIG. 1, which is the "illustrative embodiment" referred to by the inventor.

Defendant also cites a passage from the Background section in which the inventor, after describing a prior art scanner, then indicated that his specification disclosed an improvement that

"automatically grabs and moves the receipt while it is being scanned and stops at the completion of the scanning of the bill." '510 patent at 1:51-54. While this is indeed a feature of an exemplary scanner disclosed by the inventor, this feature is *not* recited in the claims asserted in this case. Instead, similar features were recited in other claims that are not asserted in this case. For example, claim 12 of the '510 patent recites "wherein said scanner is a portable scanner configured to automatically feed the receipt through said scanner while the receipt is being scanned . . ." *Id.* at 6:35-38; *see also* '410 patent at claim 23 (presenting a similar claim requirement). Merely because the Background section noted this exemplary advantage over certain prior art does not mean it must be read into every one of the patent claims. There is no requirement that an inventor include *every* unique feature of his invention in *every* claim: "It is certainly reasonable that different claims could be directed to covering those different aspects of the invention. Not every claim must contain every limitation or achieve every disclosed purpose." *ScriptPro LLC v. Innovation Assocs.*, 833 F.3d 1336, 1342 (Fed. Cir. 2016). The fact that features similar to those included in Defendant's proposed construction are recited in other (unasserted) claims counsels against importing them into the asserted claims via the term "scanner." *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1122 (Fed. Cir. 1986) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.").

      Further showing the error in Defendant's proposed construction is the fact that the asserted claims *do* expressly recite the specialized feature that the inventor relied on in obtaining allowance of the claims. For example, '510 patent claim 11 recites "a scanner for scanning various types of receipts of no predefined format." As discussed below in connection with the

7

prosecution history, it was this feature that led to the allowance of the '510 patent following a decision of the Board of Patent Appeals and Interferences. Ex. B. All of the asserted claims of the related patents include similar recitations. The fact that the inventor expressly recited this feature confirms that the inventor did not act as his own lexicographer regarding the bare term "scanner." When the inventor wanted the claim to require a particular feature, he expressly recited it. When he did not want the claim to require a feature, he didn't recite it.

Nor does the prosecution history support Defendant's proposed construction. Certainly, nothing in the prosecution of the asserted patents indicated that the inventor disavowed the ordinary meaning of "scanner" in the manner proposed by Defendant. Defendant does not argue otherwise. Moreover, during prosecution of the '510 patent, the Examiner made several prior-art rejections of the pending claims, resulting in much back and forth between the inventor and the Examiner. In presenting his rejections, the Examiner did not contend that the cited art disclosed "a portable device with a built-in feeder that scans documents as they are fed into the device" (as Defendant's contend "scanner" should be construed). *See* Ex. C, Sept. 9, 2005, Non-Final Rejection at 3; *see also* Ex. D, Jan. 9, 2006, Non-Final Office Action at 3-4; Ex. E, June 14, 2006, Final Rejection at 2-3; Ex. F, Nov. 16, 2006, Non-Final Office Action at 2-3. Moreover, the inventor did not respond by asserting that the Examiner had failed to present a proper rejection because he did not show that the prior art disclosed a portable device with a built-in feeder. Rather, the inventor traversed the rejections on other grounds. *See, e.g.,* Ex. G, Oct. 24, 2005, Response to Office Action at 2-3. This remained true even after the inventor introduced the word "scanner" into the claims. Ex. H, Apr. 3, 2006, Response to Office Action at 2, 10. The inventor did not indicate that the inclusion of the term "scanner" meant the claims now required, for example, a built-in feeder.

Furthermore, during prosecution of the application that issued as the '510 patent, when the inventor wanted to distinguish the cited art based on features of the recited scanner, he specifically amended the claim to do so. Ex. I, Feb. 15, 2007, Amendment at 5 (adding "no predefined format" language to application claim 13); Ex. J, Oct. 13, 2006 Amendment at 7 (adding application claim 14, which recited "wherein said scanner is a portable scanner able to automatically feed the receipt through said scanner while the receipt is being scanned").

Eventually, the inventor appealed the Examiner's rejections to the Board of Patent Appeals and Interferences. As required by the rules, the inventor provided a summary of the subject matter of the claims in his appeal brief. In doing so, nowhere did he describe the claimed scanner in the manner of Defendant's proposed construction. Ex. K, Appeal Brief at 3-5. Similarly, in deciding the appeal, the Board did not interpret the independent claims as requiring that the recited scanner comprise a portable device with a built-in feeder. To the contrary, the Board noted that "'[I]nterpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper." Ex. B, BPAI Decision (quoting *In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1348 (Fed. Cir. 2002)). Thus, the words and actions of the inventor, the Examiner, and the Board indicate that none of them interpreted the term "scanner" to have the narrow meaning that Defendant suggests here.

The fact that it was the express recitation of the "no predefined format" limitation that led to allowance undercuts Defendant's reliance on cases such as *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014), and *Network, LLC v. Central Corp.*, 242 F.3d 1347 (Fed. Cir. 2001). Unlike in *VirnetX*, the features Defendant is trying to read into the claims are *not* "a key part of the novel solution" to the problem addressed by the claims. *See VirnetX*, 767 F.3d at 1318. As discussed above, it was a different feature—the expressly recited "no predefined

9

format" language—that prompted the Patent Office to issue the patents. And in *Netword*, the Federal Circuit noted that the patentee had made statements in prosecution consistent with the narrower interpretation of the claims at issue. *See Netword*, 242 F.3d at 1353. As discussed above, this case presents the opposite situation. Nothing in the prosecution history suggests that the inventor, the Examiner, or the Board understood the specification to use the term "scanner" in the way Defendant proposes.

For the foregoing reasons, the Court should reject Defendant's proposed construction and give the term "scanner" its plain meaning.

**B.      Computer Input Device ('410 patent claim 1)**

| Claim Term | Bright Capture's Proposed Construction | Zoho's Proposed Construction |
|---|---|---|
| "Computer input device" | Plain and ordinary meaning | "a portable device with a built-in feeder that scans documents as they are fed into the device" |

Claim 1 of the '410 patent does not recite the term "scanner." Yet Defendant argues that "computer input device" should not only be interpreted as a "scanner," but that it should then be limited to Defendant's highly specific construction of "scanner." Defendant's argument overlooks that dependent claim 3 of the '410 patent recites "[t]he system of claim 2, wherein the computer input device is a scanner." This is a plain indication that the term "computer input device" is not limited to a scanner. *See SRI Int'l*, 775 F.2d 1107 at 1122 ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.").

Moreover, even if "computer input device" were limited to a scanner, that would not justify Defendant's effort to read into the term "computer input device" the additional requirements of "a portable device with a built-in feeder that scans documents as they are fed

10

into the device." As discussed above, the patent opens with a statement that refers to "a scanner, an apparatus for scanning receipts into a computer" without referencing those features. *See* '510 patent at Abstract. Nor did the ordinary meaning of the term "scanner" at the time of the invention require these features. Ex. A, Microsoft Computer Dictionary. Moreover, dependent claim 23 of the '410 (which depends from claim 20, which does recite a scanner) patent recites "wherein said scanner is a portable scanner configured to automatically feed the receipt through said scanner." This express recitation in a dependent claim of features similar to those included in Defendant's construction shows that they are not requirements of the term "scanner" alone (much less "computer input device"). Certainly, nothing in '410 patent claim 1 indicates that the recited computer input device must include such features.

The Court should therefore reject Defendant's effort to shoehorn into the term "computer input device" a requirement that it include a built-in feeder that scans documents as they are fed into the device.

### C.     Preamble of Claim 16 of the '151 Patent

The Federal Circuit has held that "'[g]enerally . . . the preamble does not limit the claims.'" *Am. Med. Sys. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)). The preamble is considered limiting if it provides antecedent basis for elements recited in the body of the claim, recites essential structure or steps, or is necessary to give life, meaning, and vitality to the claim. *Am. Med.*, 618 F.3d at 1358-59. "A preamble is not regarded as limiting, however, 'when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention.'" *Am. Med. Sys.*, 618 F.3d at 1358-59 (quoting *Catalina Mktg. Int'l, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002)).

Defendant's assertion that claim 16's preamble recites a necessary and defining aspect of the invention overlooks that the method recited in the body of claim 16 does not mention *any* of the elements recited in the preamble (i.e., a scanner or a computing device). Nor does the body of claim 16 rely on the preamble for antecedent basis for any terms recited in the body. Thus, these typical hallmarks of limiting preambles are absent. In contrast, Plaintiff agreed with Defendant that the preamble of claim 1 of the '070 patent is limiting because the body of that claim relies on the preamble for antecedent basis for certain terms.

The body of '151 patent claim 16 recites a fully orbed method. In particular, '151 patent claim 16 recites "processing a digital image of a document having no predefined format and containing numerical information." As discussed above, it was a similar recitation that led the Board of Patent Appeals & Interferences to decide that certain claims of a parent application were allowable. As *Kropa v. Robie*, one of the cases cited by Defendant explains, "the preamble has been denied the effect of a limitation where the claim or count was drawn to a structure and the portion of the claim following the preamble was a self-contained description of the structure not depending for completeness upon the introductory clause." 187 F.2d 150, 152 (CCPA 1951). Or, in the language of *Am. Med.*, the deletion of the preamble would not affect the steps recited in the body of this method claim. *See Am. Med.*, 618 F.3d at 1358.

Therefore, as the body of claim 16 recites a method that can stand alone, the preamble is not limiting. *See In re Wertheim*, 541 F.2d 257, 270 (CCPA 1976) (declining to find preamble limiting because preamble did not provide antecedent basis for terms in the claim body and the preamble was not necessary to define the relationship of elements recited in the body); *In re Rohrbacher*, 48 C.C.P.A. 749, 751 (CCPA 1960) (finding preamble was not limiting because "statements of adaptation for an intended use have been held not to limit the claims to the

particular use specified"); *Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-467-JVS(RNBx), 2006 U.S. Dist. LEXIS 97882, at *62-*63 (C.D. Cal. Sept. 11, 2006) (declining to find preambles limiting because while "the preambles state the framework of the [asserted] patent by claiming a data communication system with spread spectrum capability for collecting and communicating data . . . the Court cannot say that it gives 'life, meaning and vitality' to the claims because the preamble does not mention the adaptive capabilities of the claimed system").

Accordingly, the Court should reject Defendant's argument that the preamble of claim 16 of the '151 patent is limiting.

## IV.     Conclusion

For the foregoing reasons, the Court should apply the plain and ordinary meaning of the terms "scanner" and "computer input device." The Court should also find that the preamble of claim 16 of the '151 patent is not limiting.

This 6th day of March, 2023.

*/s/ Cortney S. Alexander*
Cortney S. Alexander
cortneyalexander@kentrisley.com
Tel: (404) 855-3867
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff