EXHIBIT E

 

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/054,390 | 01/24/2002 | Radha K. C. Pandipati | | 8442 |

7590   06/14/2006

Radha K. C. Pandipati
Kris Engineering Inc
19531 Desmet Place
Montgomery Village, MD 20886

| EXAMINER |
|---|
| WORKU, NEGUSSIE |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2625 | |

DATE MAILED: 06/14/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| Office Action Summary | Application No. | Applicant(s) |
|---|---|---|
| | 10/054,390 | PANDIPATI, RADHA K. C. |
| | Examiner | Art Unit |
| | Negussie Worku | 2626 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

**A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.**
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on *03 April 2006*.
2a) ☒ This action is **FINAL**.    2b) ☐ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) *1-12* is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) *1-12* is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.
10) ☒ The drawing(s) filed on *03 April 2006* is/are: a) ☒ accepted or b) ☒ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
   * See the attached detailed Office action for a list of the certified copies not received.

DOUGLAS Q. TRAN
PRIMARY EXAMINER

**Attachment(s)**
1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 1-04)                    Office Action Summary                    Part of Paper No./Mail Date 20050808

Application/Control Number: 10/054,390 Page 2
Art Unit: 2626

## DETAILED ACTION

1. Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, *THIS ACTION IS MADE FINAL.*

### *Claim Rejections - 35 USC § 112*

2. The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter, which the applicant regards as his invention.

3. Claim 1, recites the limitation "the financial data" in 3rd line of claim 1. There is insufficient antecedent basis for this limitation in the claim.

### *Claim Rejections - 35 USC § 103*

4. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

5. Claims 1-11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hu et al. (USP 6,459,506) in view of Hamilton (USP 6,462,842).

Regarding claim 1, Hu et al. discloses an apparatus (shown in fig 3), which manages and organizes the financial data, (any data recorded on a paper, can be

Application/Control Number: 10/054,390 Page 3
Art Unit: 2626

scanned by scanner 300 of fig 3) comprising; a scanner (scanner 300 of fig 3) to scan receipts (320 of fig 3); and a compute, (computer 302 of fig 3) connected to the scanner (computer 302, connected via interface 316) and lodes with a software which processes, (a software or a program loaded in computer 302 of fig 3, processes, manage, data scanned by scanner 300, which is connected to PC computer through USB interface 316), organizes and saves the scanned information including numerical data in the receipts to scan bills (document or a memo scanned by scanner 320 of fig 3).

Although Hu et al., shows a compute (302 of fig 3), with a processor fail expressly to teach a software, which processes data information, including numerical data.

Hamilton in the same area of document scanning and a computer program for processing and controlling a scanner teaches a software (a computer program or a software source code written in C and object code, intended to run a microcontroller), which automatically organizes all the information from the scanned bills (the software contains many function, controlling or organizing information apparent to those skilled in the art, see col.4, lines 10-20).

Therefore, it would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified the scanning and a processing apparatus of Hu et al. to include: a software which organizes all the information from the scanned bills (document), including numerical values.

Application/Control Number: 10/054,390          Page 4
Art Unit: 2626

It would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified document scanning and processing device of Hu et al. by the teaching of Hamilton, for the purpose of increasing data throughput and controlling the function of the scanning device, such as information processing, file managing, such as calculating a numerical value and for automatic data entry between scanner and computer devices.

Regarding claim 2, Hu et al. teaches an apparatus (as shown in fig 3 and 4), wherein the scanner (300 of fig 1) is connected to a computer (computer 302 of fig 1) through a USB port (USB interface 316 of fig 3) or pass through parallel, col.4, lines 52-65).

Hu et al. does not teach or disclose a software program loaded into the program.

Hamilton in the same area of document scanning and data processing teaches a software loaded into the program (a computer program or a software source code written in C and object code, intended to run a microcontroller loaded in to the PC processor 102 of fig 1).

Therefore, it would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified the scanning and processing apparatus of Hu et al. to include: the unique software program loaded into the program.

It would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified document scanning and processing device of Hu et al. by the teaching of Hamilton for the purpose of increasing data throughput and

controlling the function of the scanning device, such as information processing, and for automatic data entry between scanner and computer devices.

Regarding claim 3, Hu discloses an apparatus (fig 3), where as the bills (documents or information are being scanned by scanner 300) are being scanned all the information from the scanned receipts is automatically entered into the computer (documents or information are being scanned by scanner 300 entered into the computer 302 of fig 1 through USB interface115 of fig 3).

Regarding claim 4, Hu et al. does not disclose an apparatus, wherein the receipts include grocery receipts, credit card receipts or bank statement.

Hamilton in the same area of document scanning and processing teaches or disclose (a computer program or a software source code written in C and object code, intended to run a microcontroller loaded in to the PC processor 102 of fig 1).

Therefore, it would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified the scanning and processing apparatus of Hu et al. to include: wherein the software program process all the information and organize it.

It would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified document scanning and processing device of Hu et al. by the teaching of Hamilton for the purpose of increasing data throughput and

Application/Control Number: 10/054,390 Page 6
Art Unit: 2626

controlling the function of the scanning device, such as information processing, and for automatic data entry between scanner and computer devices.

Regarding claim 5, Hu et al. discloses an apparatus (fig 3), wherein the organized data can be viewed as tabular form or pie-chart form, (data scanned and entered to the computer 302 of fig 3, can be viewed on the display monitor of computer 302 of fig 3, an can be configured in a computer file in a way suitable to be managed easily).

Regarding claim 6, Hu et al. does not disclose an apparatus wherein a format tabular data formats include income-expense reports, expenses versus planned budget, and list of all expenses grouped under various categories.

Hamilton in the same area of document scanning and processing teaches or disclose an apparatus wherein the tabular data formats include income-expense reports, expenses versus planned budget, and list of all expenses grouped under various categories, (data scanned and entered to the computer 150 of fig 8, can be viewed on the display monitor of computer 150 of fig 8).

Therefore, it would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified the scanning and processing apparatus of Hu et al. to include: an apparatus wherein the tabular data formats include income-expense reports, expenses versus planned budget, and list of all expenses grouped under various categories.

It would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified document scanning and processing device of Hu et al. by the teaching of Hamilton for the purpose of increasing data throughput and controlling the function of the scanning device, such as information processing, and for automatic data entry between scanner and computer devices.

Regarding claim 7, Hu et al. discloses an apparatus (fig 3), wherein the apparatus allows editing the information from the scanned receipts (scanned document and entered to the PC 302 of fig 3, can be edited).

Regarding to claim 8, Hu et al. discloses apparatus (fig 1-4), wherein the apparatus automatically saves the information scanned from the bills in the Quicken Interchange Format, allowing it to be imported by any financial management program like Quicken, Money, etc, (document or the information scanned by scanner 300 of fig 3, automatically entered and saved to computer (PC) 302 of fig 3, and imported for different purpose).

Regarding to claim 9, Hu et al. teaches an apparatus (fig 3-4), wherein each scanned receipt will be turned into an individual transaction, (document scanned and entered to computer and can be managed as individual transaction);

Application/Control Number: 10/054,390                                                                 Page 8
Art Unit: 2626

Regarding to claim 10, Hu et al. teaches an apparatus (fig 3-4), wherein the multiple items in the receipt will be used to create a "split" transaction with proper customizable categories, (plurality of scanned document can be treated and given a customized file by the software for handling the file).

Regarding to claim 11, Hu et al. does not teach, wherein the software allows for record keeping, budgeting and reconciliation.

Hamilton in the same area of document scanning and processing teaches or disclose a software the software contains many function, controlling or organizing information apparent to those skilled in the art, see col.4, lines 10-20).

Therefore, it would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified the scanning and processing apparatus of Hu et al. to include: software allows for record keeping, budgeting and for balancing budget.

It would have been obvious to a person with ordinary skill in the art at the time the invention was made to have modified document scanning and processing device of Hu et al. by the teaching of Hamilton for the purpose of increasing data throughput and controlling the function of the scanning device, such as information processing, and for automatic data entry between scanner and computer devices.

Regarding to claim 12, Hu et al. teaches, wherein the information (fig 3) includes name, price, and quantity of each of the items purchased; date of the purchased;

name, address, phone number of the vendor or shop where the items were taxes paid (scanned document inputted to computer can be configured to arrange according to needed folder using a file management soft ware of computer 302 of fig 3).

## Conclusion

6.  Applicant's response filed April 03, 2006, has been reviewed and respectfully considered as indicated in the Office action discussed above. However, the rejection to the amended application has been maintained for the reason as follows:

a) Examiner believes that the prior art used to reject the application still read on the amended claims, one cannot show nonobviousness by attacking references individually where the rejections are based on combinations of references.

b) The amended claimed limitation are still taught by the reference because the amended claimed limitation do not clearly point out the patentable novelty which he or she thinks the claims present in view of the state of the art disclosed by the references cited.

c) The claimed limitation does not show how the amendments avoid such references or objections, and/or how the claims define a patentable invention specifically pointing out how the language of the claims patentably distinguishes them from the references.

Therefore, the rejection to claims 1 through 12, have been maintained, and this Office action is final, necessitated by applicant's amendment.

9      Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

8.    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Negussie Worku whose telephone number is 571-272-7472. The examiner can normally be reached on 9am-6pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Moore can be reached on 571-272-7437. The fax phone number for the organization where this application or proceeding is assigned is 703-872-9306.

Application/Control Number: 10/054,390  Page 11
Art Unit: 2626

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

Negussie Worku
15/31/06

DOUGLAS Q. TRAN
PRIMARY EXAMINER