IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

BRIGHT CAPTURE LLC,

          Plaintiff,

   v.

ZOHO CORPORATION,

          Defendants.

Case No. 6:22-cv-48

**PLAINTIFF'S SURREPLY CLAIM CONSTRUCTION BRIEF**

# Table of Contents

I.   Argument ...................................................................................................... 1

    A.   Scanner ('510 patent claim 11; '070 patent claim 1; and '151 patent preamble) . 1

    B.   Computer Input Device ('410 patent claim 1) ...................................... 7

    C.   Preamble of Claim 16 of the '151 Patent ........................................... 9

II.   Conclusion ............................................................................................ 11

**Table of Authorities**

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  728 F.3d 1324 (Fed. Cir. 2013)……………………………………………………………8

*Broadcom Corp. v. Qualcomm Inc.*,
  No. SACV 05-467-JVS(RNBx), 2006 U.S. Dist. LEXIS 97882 (C.D. Cal. Sept. 11, 2006)….10

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010). ……………………………………………..……….7

*GPNE Corp. v. Apple Inc.*,
  830 F.3d 1365 (Fed. Cir. 2016)……………………………………………………………4

*Hill-Rom Co. v. Kinetic Concepts, Inc.*,
  209 F.3d 1337 (Fed. Cir. 2000)……………………………………………………………2

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
  822 F.3d 1312 (Fed. Cir. 2016)……………………………………………………………9

*In re Cruciferous Sprout Litigation*,
  301 F.3d 1343 (Fed. Cir. 2002)……………………………………………………………6

*In re Rohrbacher*,
  48 C.C.P.A. 749 (CCPA 1960)……………………………………………………………...10

*In re Wertheim*,
  541 F.2d 257 (CCPA 1976)………………………………………………………………10

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017)……………………………………………………………9

*Liebel-Flarsheim C. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)…………………………………………………………4, 5, 7

*ScriptPro LLC v. Innovation Assocs.*,
  833 F.3d 1336 (Fed. Cir. 2016)………………………………………………..…..4, 8

*Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*,
  743 F.3d 1359 (Fed. Cir. 2014)……………………………………………………………9

**Statutes & Regulations**

Manual of Patent Examining Procedure § 2131……………………………………………..6

Zoho accuses Bright Capture of ignoring what the inventor described as his invention. The opposite is true. Zoho ignores the ordinary meaning of the term "scanner" and the description of the invention in the Abstract, instead zeroing in on features of the preferred embodiment (which the inventor was required to disclose in order to comply with the best-mode requirement). These features were not recited in the asserted claims, but similar features are expressly recited in *unasserted* dependent claims. Moreover, the features Zoho wants to import into the asserted claims played no part in the extensive back-and-forth between the inventor and the Patent Office, which ultimately resulted in the allowance of the claims for reasons having nothing to do with the features Zoho claims are critical to the invention. A person of ordinary skill in the art, reading the specification and prosecution history, would have understood the inventor to have used the term "scanner" consistently with its ordinary meaning—not in the narrow way Zoho proposes.

## I.      Argument

### A.      Scanner ('510 patent claim 11; '070 patent claim 1; and '151 patent preamble[1])

| Claim Term | Bright Capture's Proposed Construction | Zoho's Proposed Construction |
| --- | --- | --- |
| "scanner" | Plain and ordinary meaning | "a portable device with a built-in feeder that scans documents as they are fed into the device" |

Contrary to Zoho's assertion, a person of ordinary skill in the art, reading the claims in light of the intrinsic record, would not understand the term "scanner" to require a portable device with a built-in feeder.

---

[1] The parties dispute whether the preamble is limiting.

1

Zoho tacitly concedes that the ordinary meaning of "scanner" at the time of the invention did not require, for example, a built-in feeder, as reflected by the contemporaneous definition in the Microsoft Computer Dictionary:

> An optical input device that uses light-sensing equipment to capture an image on paper or some other subject. The image is translated into a digital signal that can then be manipulated by optical character recognition (OCR) software or graphics software. Scanners come in a number of types, including flatbed (scan head passes over a stationary subject), feed (subject is pulled across a stationary scan head), drum (subject is rotated around a stationary scan head), and handheld (user passes device over a stationary subject).

Dkt. 35-2. Thus, Zoho is arguing that a person of ordinary skill in the art reading the specification and prosecution history of the asserted patents would understand that the inventor used the term "scanner" inconsistently with its ordinary meaning and instead used the word "scanner" in the narrow way Zoho proposes. Neither the specification nor the prosecution histories dictate this result.

As Bright Capture's responsive brief noted, the Abstract of the '510 patent states that "[t]he system contains a scanner, *an apparatus for scanning receipts into a computer* and a unique software program which automatically processes, organizes and saves expense information that can be viewed in various formats, namely, tabular statements, pie-charts, etc." '510 patent at Abstract (emphasis added). This description of the scanner—an apparatus for scanning receipts into a computer—is consistent with the ordinary meaning of the term. That it comes in the Abstract is particularly important. "The purpose of the abstract is to enable the United States Patent and Trademark Office and the public generally to determine quickly from a cursory inspection the nature and gist of the technical disclosure." 37 C.F.R. § 1.72; *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n.* (Fed. Cir. 2000). Zoho's responsive brief (and its opening brief) ignored this critical passage from the specification. The fact that the

inventor did not indicate that a scanner must include a built-in feeder in this section strongly suggests that he did not use the term "scanner" in the manner Zoho proposes.

This is especially true given that the Abstract *does* state that "[t]he scanner, which accommodates paper of differing sizes, is used to input bills, receipts, bank statements, etc." '510 patent at Abstract. This description is consistent with asserted claim 11 of the '510 patent, which requires that the scanner "scan[] various types of receipts of no predefined format." '510 patent at 6:20-21. It was this claim language that led to the allowance of the '510 patent. Dkt. 35-3 at 11. The claims of the other (subsequently issued) asserted patents include similar recitations. The fact that the Abstract included a reference to this feature, but not to a built-in feeder, undermines Zoho's argument that a built-in feeder is so critical to the invention that a person of ordinary skill in the art would understand that the inventor used the term "scanner" synonymously with a device having a built-in feeder.

Zoho argues that it is not reading in features of a preferred embodiment because its construction "is rooted in every embodiment described in the Specification." Dkt. 36 at 2. This is mere wordplay, however, as the specification only describes a single preferred embodiment. *See, e.g.*, '510 patent at 3:44-45 ("An embodiment of the present invention will be described hereinafter with reference to the accompanying drawing."). As discussed in Bright Capture's opening brief, the inventor's description of his preferred embodiment was required by the patent law's requirement that inventors disclose their best mode for practicing the invention. Had the inventor not disclosed these features of his best mode, his patent could have been invalidated on that basis.[2] Zoho's reply brief does not engage with this reality of patent law. Nor does Zoho

---

[2] While the America Invents Act changed the law such that failure to comply with the best-mode requirement is no longer grounds for invalidation, the application in this case was filed prior to

engage with the fact that the specification expressly referred to the "illustrative" nature of the embodiment. *Id.* at 3:36. The inventor's disclosure of only a single embodiment does not warrant importing unrecited features of that embodiment into the claim. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction").

Zoho also continues to lean too heavily on one statement in the Background in which the inventor, after describing a prior art scanner, indicated that his specification disclosed an improvement that "automatically grabs and moves the receipt while it is being scanned and stops at the completion of the scanning of the bill." '510 patent at 1:51-54. This passage does not show that the inventor redefined the word "scanner" itself to include a built-in feeder. As detailed in Bright Capture's opening brief, the inventor obtained allowance of the claims based on a different feature that was expressly added to the claims to overcome prior-art rejections. Zoho's Reply did not dispute that an inventor need not include *every* unique feature of his invention in *every* claim: "It is certainly reasonable that different claims could be directed to covering those different aspects of the invention. Not every claim must contain every limitation or achieve every disclosed purpose." *ScriptPro LLC v. Innovation Assocs.*, 833 F.3d 1336, 1342 (Fed. Cir. 2016). This case is unlike *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016), cited by Zoho, where the asserted patent used the words pager or pager units "over 200 times." Moreover, in that case, the inventor submitted a declaration during prosecution "describ[ing] the invention

_____

the enactment of the AIA. Moreover, even after the AIA, inventors are still required to disclose their best mode for practicing the invention.

4

as a system of pagers." *Id.* at 1371. As discussed below, here, the prosecution history shows that neither the inventor nor the Patent Office interpreted "scanner" as Zoho proposes.

Zoho also concedes that certain dependent claims recite features similar to those it seeks to import into the asserted claims (which do not recite these features). This includes, for example, '510 patent claim 12, which recites "wherein said scanner is a portable scanner configured to automatically feed the receipt through said scanner while the receipt is being scanned . . ." *Id.* at 6:35-38. Zoho misses the point in arguing that the doctrine of claim differentiation doesn't apply because these dependent claims also recite an additional feature not included in their corresponding independent claim. A person of ordinary skill reading claim 12 would see its recitation, "wherein said scanner is a portable scanner," and understand that the term "scanner" alone does *not* require a scanner to be portable. Otherwise, there would be no need to expressly recite "wherein said scanner is a portable scanner." The fact that the inventor expressly recited these features of the "scanner" in a dependent claim would strongly suggest to a person of ordinary skill that the inventor did not use the term "scanner" alone in the narrow way Zoho argues. *See Liebel-Flarsheim*, 358 F.3d at 909 ("The omission of reference to a pressure jacket in many of the claims of the applications that matured into the [asserted patents] is a strong indication that the applicants intended those claims to reach injectors that did not use pressure jackets."). This is also demonstrated by the fact that the inventor amended the independent claims to recite that the scanner is "for scanning various types of receipts of no predefined format." Had the specification built every novel feature disclosed in the invention into the word "scanner" alone, there would have been no need to amend the claim to recite this language. Once again, Zoho did not respond to this argument presented in Bright Capture's responsive brief.

The prosecution history also refutes Zoho's proposed construction. As discussed in Bright Capture's responsive brief, the Board of Patent Appeals and Interferences indicated that it would not read limitations from the specification into the claims in evaluating their patentability: "'[I]nterpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper." Dkt. 35-3 at 8, BPAI Decision (quoting *In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1348 (Fed. Cir. 2002)). While the Board reversed the Examiner's rejection of claims that recited the "no predefined format" limitation, the Board upheld the Examiner's rejection of claims that did not expressly include that language. The Board would not read the "no predefined format" language into claims that did not recite it. Dkt 35-3 at 8-9. It was on this principle that the negotiation between the inventor and the Patent Office was conducted, and it would be inappropriate and inequitable to now build into the term "scanner" limitations that neither the inventor nor the Patent Office understood it to include.

Bright Capture's responsive brief walked through the prosecution history to show that the Examiner did not interpret the term "scanner" to require a portable device including a built-in feeder that scans documents as they are fed into the device. This is apparent because, in presenting prior art rejections, the Examiner did not point out where the cited art included such features. Zoho's reply argues that the prior art did in fact include such features. This is irrelevant. Zoho concedes that the Examiner's rejections did not *identify* any portability or built-in feeder in the cited art when rejecting the independent claims. Had the Examiner believed that the term "scanner" required a portable device with a built-in feeder, he would have pointed out that the cited art included such features—just like he did for the other recited claim elements, consistent with patent-examining procedure. *See* Manual of Patent Examining Procedure § 2131 ("the

identical invention must be shown in as complete detail as is contained in the . . . claims."). But he didn't do that. In presenting his rejection of the independent claims, he said nothing about portability or a built-in feeder. This is obviously because he did not understand the term "scanner" alone to require such features.

Zoho did not dispute that the parties' dispute regarding this term would be resolved if the Court were to reject its proposed construction. Therefore, the Court should decline Zoho's invitation to read features of the preferred embodiment into the term "scanner" and construe the term in accordance with its ordinary meaning. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (holding that district court did not err in construing claim phrase according to its plain meaning because the court resolved the parties' dispute).

### B.    Computer Input Device ('410 patent claim 1)

| Claim Term | Bright Capture's Proposed Construction | Zoho's Proposed Construction |
|---|---|---|
| "Computer input device" | Plain and ordinary meaning | "a portable device with a built-in feeder that scans documents as they are fed into the device" |

Zoho admits that the doctrine of claim differentiation, if applicable, forecloses its effort to construe the term "computer input device" as a scanner. This is because dependent claim 3 recites, "wherein the computer input device is a scanner." *See Liebel-Flarsheim*, 358 F.3d at 910 ("where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest.").

Zoho incorrectly argues that invoking claim differentiation would result in the invention being broadened beyond that supported by the intrinsic record. But the features Zoho wants to import into the term "computer input device"—including a built-in feeder—played no role in the allowance of claim 1 of the '410 patent. Zoho does not suggest otherwise. As discussed

regarding the term "scanner," it was a different feature (the ability to scan documents having no predefined format) that led to the allowance of the claims in the '510 patent and its child patents.

Zoho does not argue that its construction is necessary for '410 patent claim 1 to practice the feature that led to the allowance of this claim (or any other feature recited in the claim). Instead, Zoho argues that the inventor's compliance with the best-mode requirement and statement describing one distinction over a particular prior-art reference means that *every claim* must include the features of the best mode. This flatly contradicts the patent law, which recognizes that "[i]t is certainly reasonable that different claims could be directed to covering those different aspects of the invention. Not every claim must contain every limitation or achieve every disclosed purpose." *ScriptPro LLC v. Innovation Assocs.*, 833 F.3d 1336, 1342 (Fed. Cir. 2016).

Zoho also argues that its construction is necessary to save '410 patent claim 1 from invalidity for failing to comply with the written-description requirement. First, this principle does not condone "judicial rewriting of claims." *Liebel-Flarsheim*, 358 F.3d at 911. Second, Zoho is wrong that '410 patent claim 1 must be interpreted as Zoho proposes to fulfill the written-description requirement. Zoho fails to put forward any evidence that a person of ordinary skill would only understand claim 1's subject matter to find support in the specification if the claim is interpreted as Zoho proposes. Given that a challenger must prove this issue by clear-and-convincing evidence, Zoho's conclusory attorney argument hardly carries the day.

Finally, the case law Zoho cites in support of this argument is inapplicable to the present situation. Zoho's first case, *Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1330-31 (Fed. Cir. 2013), hardly supports its argument. As Zoho itself describes, in that case, the court "reject[ed] an attempt to construe [a] term more broadly than its well-accepted scientific

meaning." Dkt. 36 at 9. Here, Bright Capture does not propose that the term "scanner" be construed broader than its well-accepted meaning. Bright Capture expressly relies on the accepted ordinary meaning to show the impropriety in Zoho's attempt to narrow the term. *See* Dkt. 35-2 (Microsoft Computer Dictionary, Fifth Edition, defining "scanner"). Also inapposite is *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc*., 743 F.3d 1359 (Fed. Cir. 2014). In that case, the Federal Circuit referred to "an equal choice between a broader and a narrower meaning of a claim." *Id.* at 1365 (quotation omitted). Here, it is not an equal choice given the claim-differentiation issue discussed above. For the same reason, Zoho's reliance on *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1322 (Fed. Cir. 2016), is misplaced. As that case noted, "[w]hen the claims leave little doubt as to what is intended, re-shaping the claims with material from the written description is clearly unwarranted." Here, by including a dependent claim reciting "wherein the computer input device is a scanner," the claims leave no doubt that "computer input device" is not limited in the manner Zoho proposes. Finally, *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320 (Fed. Cir. 2017), is also inapposite. There, the defendant argued for a broad construction of a claim that conflicted with *its own* interpretation of the specification. *Id.* at 1325-26. That is not the case here.

For the foregoing reasons, as well as those stated in Bright Capture's responsive brief, the Court should adopt the plain meaning of "computer input device" and reject Zoho's effort to incorporate aspects of the specification's preferred embodiment into that term.

### C.    Preamble of Claim 16 of the '151 Patent

Zoho mischaracterizes Bright Capture's argument regarding the preamble of claim 16 of the '151 patent. Bright Capture did *not* argue that a preamble is only limiting if it provides antecedent basis for claim elements recited in the body. Rather, Bright Capture correctly noted

that this is one common ground for finding the preamble limiting, and that that ground is not present in this case.

Zoho sidesteps the remainder of Bright Capture's argument. Bright Capture's responsive brief explained that the body of '151 patent claim 16 recites a fully orbed method, including "processing a digital image of a document having no predefined format and containing numerical information." It was a similar recitation that led to the allowance of the '151 patent's parent. Since the body of claim 16 recites a method that can stand alone, the preamble is not limiting. *See In re Wertheim*, 541 F.2d 257, 270 (CCPA 1976) (declining to find preamble limiting because preamble did not provide antecedent basis for terms in the claim body and the preamble was not necessary to define the relationship of elements recited in the body); *In re Rohrbacher*, 48 C.C.P.A. 749, 751 (CCPA 1960) (finding preamble was not limiting because "statements of adaptation for an intended use have been held not to limit the claims to the particular use specified"); *Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-467-JVS(RNBx), 2006 U.S. Dist. LEXIS 97882, at *62-*63 (C.D. Cal. Sept. 11, 2006) (declining to find preambles limiting because while "the preambles state the framework of the [asserted] patent by claiming a data communication system with spread spectrum capability for collecting and communicating data . . . the Court cannot say that it gives 'life, meaning and vitality' to the claims because the preamble does not mention the adaptive capabilities of the claimed system").

While Zoho asserted in conclusory fashion that the preamble recites the core components of the invention, it made no effort to explain why the body of claim 16 did not account for allegedly critical functionality. The body expressly recites the element that led to allowance in the parent application. Thus, the "defining aspect" of the invention, to use Zoho's language, is recited in the body of the claim, not in the preamble. Moreover, the body recites "processing a

digital image of a document . . . containing numerical information to automatically extract the numerical information." '151 patent at 6:34-36. This language in the body of the claim, which generally describes scanning functionality, undermines Zoho's argument that the preamble's reference to a scanner recites critical components not otherwise accounted for in the body.

Thus, the Court should not find the preamble of '151 patent claim 16 limiting.

**II.    Conclusion**

For the foregoing reasons, the Court should apply the plain meaning of "scanner" and "computer input device" and find that the preamble of claim 16 of the '151 patent is not limiting.

This 3rd day of April, 2023.

*/s/ Cortney S. Alexander*
Cortney S. Alexander
cortneyalexander@kentrisley.com
 Tel: (404) 855-3867
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff
